[744 NYS2d 409]

In the Matter of BART L. NASON (Admitted as BART LAWRENCE NASON), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 11, 2002

**APPEARANCES OF COUNSEL**

*Stephen P. McGoldrick* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on June 11, 1986, as Bart Lawrence Nason. At all times relevant to the instant proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee moves for an order immediately suspending respondent from the practice of law until further order of the Court upon his willful failure to cooperate with the Committee in its investigation and other uncontested evidence of professional misconduct which immediately threatens the public interest. The Committee's motion is based upon documentary evidence and respondent's deposition testimony with respect to two disciplinary matters. Respondent has not appeared in this proceeding.

On April 17, 2001, Miriam Pollack filed a complaint with the Committee alleging that respondent failed to remit funds to which she was entitled. In July 2000, respondent represented her daughter, Linda Golden, in the sale of Golden's home and was directed by Golden to remit a portion of the sale proceeds held in his escrow account ($50,436) to Pollack. Although respondent issued a check to Pollack, he put a stop payment order on it and subsequent replacement checks. Eventually respondent remitted some but not all of the funds to Pollack. Golden also filed a complaint with the Committee reiterating the allegations made by Pollack.

On July 16, 2001, respondent submitted an answer to Pollack's complaint in which he admitted that he was supposed to disburse the sum of $50,436 to Pollack and that he has not fully paid her the sum she is entitled to. He stated further that he told Pollack that he would "repay" her the money which she was owed at 9% interest. Based upon these statements, the Committee subpoenaed respondent's client file and bank records of his escrow account for the period January 2000 through July 2001. The closing statement prepared in connection with the Golden transaction shows that $50,436 was supposed to be disbursed from respondent's escrow account to Pollack at the time of closing.

On January 15, 2002, respondent was deposed by the Committee and testified that on April 3, 2000 he made a deposit into his escrow account of $80,000, which was never credited by Citibank, and began drawing against it. Allegedly due to

Citibank's mistake, respondent has been unable to repay Pollack her money. He explained that the source of this purported deposit represented repayment of a loan he made to a certain Mark Berlin which was to be repaid by a certain Mr. Rubinstein, who was Berlin's employer. Respondent testified further that he did not document the alleged loan to Berlin and has not resolved the issue with Citibank, but that he possessed a deposit slip evidencing such a transaction. However, notwithstanding the Committee's request, respondent has not produced the deposit slip.

Respondent also testified that a deposit of $81,500 credited to his escrow account on April 14, 2000 represented a 10% deposit by the purchaser in the Golden transaction. Respondent's bank records and his testimony regarding subsequent transactions, reveal that he immediately began to disburse this deposit in connection with matters having nothing to do with the Golden transaction. For example, on April 21, 2000, respondent wrote a check payable to himself in the amount of $26,666.66 but claimed he was withdrawing against the alleged April 3, 2000 $80,000 deposit from Berlin. Although some deposits and withdrawals appeared to have been valid escrow transactions, on June 13, 2000, respondent disbursed $25,000 by check to himself which brought the escrow account balance down to $3,044.07. On July 14, 2000, respondent deposited $30,674.66 into his account which were surplus monies from a foreclosure intended for his client Robert Osborne, bringing his account balance up to $33,718.73. The Golden transaction closed on July 25, 2000 and respondent wrote numerous checks in connection with the closing. He also wrote checks payable to himself in the sum of $1,000 representing his legal fee on the Golden transaction, and two checks in the sum of $1,250. Respondent could not recall what those latter disbursements were for.

Also at the time of the closing on July 25, 2000, respondent issued a check for $50,436 payable to Miriam Pollack even though there were insufficient funds in the account. The next day respondent stopped payment on this check. Respondent testified that he telephoned Pollack and explained that there were insufficient funds, asked her to wait to deposit the check, and offered to pay her 9% interest if the situation took a period of time to resolve. According to respondent, Pollack agreed to this arrangement. Expecting that he would be receiving a $50,000 payment from Berlin, on or about October 24, 2000 respondent issued another check made payable to Pollack for

$51,570.83 which, according to respondent, represented the money that was owed to her at the time of the closing plus interest. Although he deposited a check from Berlin for the expected amount into his escrow account, the check was returned due to insufficient funds and he then stopped payment on the second check to Pollack.

On January 4, 2001, respondent had a bank check issued to Pollack in the amount of $26,000 but Citibank cancelled the check because it was allegedly drawn against a wire transfer that Citibank claimed was improperly credited to respondent's account. Respondent testified that Citibank reversed the cancellation but, to date, Pollack has refused to deposit the check. On January 25, 2001, respondent sent Pollack money orders totaling $2,000 and, on April 4, 2001, wired Pollack an additional $7,500. However, since then, Pollack has received no additional funds from respondent.

The Committee further states that on December 3, 2001, it received a complaint from Joseph Kelly in which he alleged that respondent, while acting as his attorney during multiple loan transactions, among other things, converted substantial sums of money. The Committee has been investigating this complaint and, by supplemental affirmation dated May 2, 2002 filed in support of the instant motion to suspend, it seeks respondent's interim suspension on the added ground of his willful failure to cooperate with the Committee's investigation of Kelly's complaint in violation of 22 NYCRR 603.4 (e) (1) (i). Although respondent has submitted an answer to Kelly's complaint, he has not complied with subsequent requests for production of escrow account records for the period January 1998 through December 1999. In response to the Committee's second request for documents, on April 5, 2002, respondent left a voice mail message claiming he had been out of the office for two weeks and would provide the documentation no later than the following week.

On April 25, 2002, respondent left a voice mail message for an investigator for the Committee in which he acknowledged that he had received the instant motion to suspend and that he would respond accordingly. On April 26, 2002, the Committee faxed a third letter advising respondent that if he did not immediately produce the requested documents, the Committee would supplement its motion to suspend to include his failure to cooperate with the Committee's investigation into the Kelly complaint. To date, respondent has not produced the requested bank records, nor has he responded to the Committee's April

26, 2002 letter. In addition, respondent has not responded to the instant motion.

22 NYCRR 603.4 (e) (1) provides for the interim suspension of an attorney, upon appropriate notice, who is the subject of a disciplinary investigation, Departmental Disciplinary Committee charges or a disciplinary proceeding pending in court, upon a finding that the professional misconduct immediately threatens the public interest. The interim suspension may be predicated either on a substantial admission made under oath that the attorney has committed misconduct, or other uncontested evidence of professional misconduct. In this case, respondent's admissions, as well as other uncontested evidence, demonstrate that he commingled client funds with business operating funds (Code of Professional Responsibility DR 9-102 [a] [22 NYCRR 1200.46]), disbursed client funds for personal and business purposes (DR 9-102 [b]), wrote checks from his escrow account to cash (DR 9-102 [e]), and failed to maintain appropriate records (DR 9-102 [d]), which we find threatens the public interest and warrants his suspension (*see, Matter of Baumgarten*, 197 AD2d 309; *Matter of Crispino*, 250 AD2d 24). In addition, by failing to produce requested bank records pertinent to the Kelly complaint, respondent has impeded the Committee's investigation which is another basis for his interim suspension (*Matter of Crispino, supra* at 25-26).

Accordingly, the Departmental Disciplinary Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (i), (ii) and (iii) should be granted and respondent should be suspended from the practice of law effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.

WILLIAMS, P.J., ANDRIAS, LERNER, RUBIN and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective immediately, until such time as disciplinary matters pending before the Departmental Disciplinary Committee have been concluded and until the further order of this Court.